UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BISMARCK GUTIERREZ,
        Petitioner,

V.                                                                        14-CV-11995- ADB

KELLY RYAN, et al.,
        Respondents.

REPORT AND RECOMMENDATION ON PETITION
UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS (#1)

## I.    INTRODUCTION

Bismarck Gutierrez ("Petitioner" or "Gutierrez") petitions for a writ of habeas corpus (#1) under 28 U.S.C. § 2254. Following a jury trial, Gutierrez was convicted of two counts of possession of a firearm without a license, one count of possession of ammunition without a license, one count of assault and battery causing serious bodily injury, and two counts of assault and battery. (#32 at 2.) Petitioner challenges his conviction by arguing that the statute under which he was convicted, Mass. Gen. Laws ch. 269, § 10(h) violates his Second Amendment right to bear arms as well as his right to due process under the Fifth and Fourteenth Amendments. Respondent counters that Petitioner's Second Amendment argument is barred because of procedural default, and even if it were not procedurally barred it would still be without merit. Respondent also argues that Petitioner's due process arguments were not sufficiently exhausted before the state court and are therefore barred. Further, Respondent argues that even when examining the merits of Petitioner's due process argument, his claim must be denied.

1

## II.    HISTORY

After his conviction, Petitioner appealed to the Massachusetts Court of Appeals (MAC). The MAC denied Petitioner's motion on October 25, 2012.  *Commonwealth v. Gutierrez,* 82 Mass. App. Ct. 1118 (2012).  Petitioner's Application for Leave to Obtain Further Appellate Review (ALOFAR) was denied by the Massachusetts Supreme Judicial Court (SJC) on December 19, 2012, *Commonwealth v. Gutierrez,* 464 Mass. 1101 (2012), and the United States Supreme Court denied certiorari on May 13, 2013. *Commonwealth v. Gutierrez,* 133 S. Ct. 2357 (2013).[1]  Petitioner also filed a motion to reconsider the denial of the application for leave to obtain further appellate review.  (# 24 at 312.)  This motion was denied by the SJC on May 3, 2014.  (#24 at 317.)

## III.    FACTS

The MAC did not make findings of fact, and therefore the following facts are taken from the state court briefs and trial transcripts.  Petitioner and Kristen Aheron ("Aheron") were dating and living at a Motel 6 in Danvers on the night of the underlying assault. (S.A. pp. 20, 132, 867-68.)  Prior to that night, Aheron observed the defendant handling what appeared to be two handguns on several occasions.  (S.A. pp. 20, 891-93, 897, 899-903.)  The night of February 11, 2009, Petitioner, Aheron, and two other individuals went to King Arthur's Lounge in Chelsea, MA.  (S.A. pp. 135, 907.)  Aheron and Petitioner got into a verbal and physical argument at the Lounge, and subsequently the foursome got into a car to return to the Motel 6.  (S.A. pp. 137, 930-33, 935.)  Aheron and Petitioner were in the backseat when Petitioner hit Aheron ten or more times in the head and face.  (S.A. pp. 21, 935-38.)  Once they got back to the motel,

---

[1] Petitioner also filed a separate appeal alleging error in the denial of a motion to suppress as well as other trial errors.  That appeal was denied by the Appellate Court on November 7, 2013. *Commonwealth v. Gutierrez,* 84 Mass. App. Ct. 1119 (2013).  The SJC denied further review on December 19, 2013. *Commonwealth v. Gutierrez,* 466 Mass. 1111 (2013).

Aheron saw that she was bleeding from the nose, and was bruised around the eyes. (S.A. pp. 138, 959.) The defendant again began beating Aheron, chocking her and hitting her for forty-five minutes to an hour. (S.A. pp. 139, 962-66, 968-72.) Petitioner fell asleep. (S.A. p. 1001.) Aheron called her mother, who picked her up and took her to the hospital. (S.A. pp. 21, 1001, 1005.) Police arrested Petitioner the next morning around 7:00 a.m. (S.A. p. 23.) When police returned to search the motel room pursuant to a warrant, they discovered two handguns and miscellaneous rounds of ammunition. (S.A. pp. 24, 1153-67) At trial, Aheron recognized one of the guns as one she previously saw Petitioner cleaning. (S.A. pp. 24, 1025-28, 1038.)

## IV.   LEGAL STANDARD

Applications for a writ of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. Eligibility for relief under AEDPA is "intentionally difficult to meet." *Woods v. Donald,* __ U.S. __, 135 S. Ct. 1372, 1376 (2015) (per curiam) (internal quotation marks and citation omitted); *see also*, *Powell v. Tompkins,* 783 F.3d 332, 336 (1st Cir. 2015) ("Securing relief under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) is an onerous task."). To obtain a writ of habeas corpus under § 2254, a petitioner must show that the state court proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly establish Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

For subsection (d)(1) challenges, the starting point "is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claim." *Marshall v. Rodgers,* __ U.S. __, 133 S. Ct. 1446, 1449 (2013) (quoting

*Williams v. Taylor,* 529 U.S. 362, 412 (2000)).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Carey v. Musladin,* 549 U.S. 70, 74 (2006).  A decision represents an unreasonable application of clearly established federal law if the state court identifies the correct governing principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  An "unreasonable application" requires "some increment of incorrectness beyond error. . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court."  *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (internal quotations and citation omitted).  The Supreme Court has explained that

> [t]his distinction creates a substantially higher threshold for obtaining relief than de novo review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

*Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted) (footnote omitted).  Furthermore,

> [w]hen assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply.'  Because AEDPA authorizes federal courts to grant relief only when state courts act *unreasonably*, it follows that '[t]he more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'

*Id.* at 776 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (second and third alterations in original). *See also*, *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (where the federal standard is general, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard"). This standard is difficult to meet because "the purpose of AEDPA is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." *Greene v. Fisher*, __ U.S. __, 132 S. Ct. 38, 43 (2011) (citing *Harrington v. Richter*, 562 U.S. 86 (2011) (further citations omitted).

Under subsection (d)(2), state-court factual findings are "entitled to a presumption of correctness." *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 81 (1st Cir. 2009) (citing *Demosthenes v. Baal,* 495 U.S. 731, 735 (1990)). A petitioner must rebut the state court factual findings by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Companonio v. O'Brien,* 672 F.3d 101, 109 (1st Cir. 2012).

## V. ANALYSIS

A. Petitioner's claim that Mass. Gen. Laws ch. 269 § 10(h), which criminalizes the possession of a firearm or ammunition without a license, violates the Second Amendment is without merit.

Petitioner argues that the Second Amendment's guarantee that "the right of the people to keep and bear Arms shall not be infringed" is violated by Mass. Gen. Laws ch. 269 § 10(h). The statute requires anyone possessing a firearm, rifle, shotgun or ammunition to have been issued a firearm identification card (FID card). ("Whoever owns, possesses or transfers a firearm, rifle, shotgun or ammunition without complying with the provisions of section 129C of chapter 140 shall be punished by imprisonment in a jail or house of correction for not more than 2 years or by

5

a fine of not more than $500.").[2]  A FID card permits an individual to keep a firearm or ammunition in his home or place of business, but does not by itself permit an individual to carry them in public.  *Powell v. Tompkins,* 783 F.3d 332, 337 (1st Cir. 2015).  According to Petitioner, ch. 269, § 10(h) criminalizes the possession of a firearm in one's home, and therefore is unconstitutional and a violation of clear Supreme Court precedent. (#2 at 3.)   Specifically, Petitioner points to the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), in which the Court stated that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." (#2 at 3, quoting *Heller,* 554 U.S. at 635).

Addressing these constitutional arguments, the MAC stated that "[t]he defendant's argument concerning the constitutionality of firearms licensure in Massachusetts, raised for the first time on appeal, is foreclosed by *Commonwealth v. Loadholt,* 460 Mass. 723, 725 (2011)." *Gutierrez,* 82 Mass. App. Ct. 1118 n.3.[3]  In *Loadholt,* the SJC identified the controlling Supreme

---

[2] Mass. Gen. Laws ch. 140 § 129(C) states that "[n]o person, other than a licensed dealer or one who has been issued a license to carry a pistol or revolver or an exempt person as hereinafter described, shall own or possess any firearm, rifle, shotgun or ammunition unless he has been issued a firearm identification card by the licensing authority . . ."

[3] Having found that Petitioner's argument is without merit, it is unnecessary to decide the procedural default argument raised by Respondent.  While Respondent is correct that habeas review is generally prohibited if the state court rests its judgment on an independent and adequate state ground, (#32 p. 13), it is unclear that the MAC rested its decision on the state's contemporaneous objection rule.  In its decision the MAC only mentions Petitioner's constitutional argument in one sentence in a footnote.  The *Loadholt* decision to which the MAC cited examines the constitutionality of FID card licensing, but is silent on the contemporaneous objection requirement.  Thus, it is not clear that the state court was, in fact, relying on the contemporaneous objection rule to dismiss Petitioner's Second Amendment claim.  *See Clark v. Spencer*, 582 F.3d 135, 144 (1st Cir. 2009) ("'[A] federal claimant's procedural default precludes federal habeas review  . . . only if the last state court rending a judgement in the case rests its judgment on the procedural default.'") (quoting *Harris v. Reed,* 489 U.S. 255, 262 (1989)). Given the ambiguity of the MAC's analysis on this issue, it is unclear whether Petitioner's argument is defaulted because the MAC did not clearly rest its analysis on the state procedural requirements.

Court precedent, *Heller*, and found that it "identified an individual right to carry and bear arms that is limited in scope." *Loadholt,* 460 Mass. at 726.

Contrary to Petitioner's contention, the MAC was correct in its interpretation when it noted that the Supreme Court in *Heller* did not find that the Second Amendment provided an unlimited right to possession of firearms or ammunition.  While the Second Amendment states "A well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed," in *Heller,* the Supreme Court noted that "[l]ike most rights, the right secured by the Second Amendment is not unlimited."  *Heller,* 554 U.S. at 626.  By way of example, the Court cited prohibitions on carrying concealed weapons, possession of weapons by the mentally ill, and the carrying of weapons in sensitive places.  *Id.* "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.'  We repeat those assurances here." *McDonald v. City of Chicago, Ill.* 561 U.S. 742, 786 (2010) (quoting *Heller*, 544 U.S. at 626).  The *Heller* Court "recognized that 'the right secured by the Second Amendment is not unlimited' and listed examples of 'presumptively lawful regulatory measures,' but declined to 'clarify the entire field' of Second Amendment jurisprudence." *Woollard v. Gallagher,* 712 F.3d 865, 874 (4th Cir. 2013) (quoting *Heller*, 554 U.S. at 626-27.)

The *Heller* decision does not impose a blanket prohibition on the regulation of firearms. Instead, the Court's holding in *Heller* was much more limited.  "[T]he District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home inoperable for the purpose of immediate self-defense." *Heller*,

7

554 U.S. at 635; *see also McDonald,* 561 U.S. at 749-750 ("Two years ago, in *District of Columbia v. Heller,* 554 U.S. 570, (2008), we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, and we struck down a District of Columbia law that banned possession of handguns in the home.").[4]  *Heller's* holding is limited to finding that a total ban on gun ownership in the home is unconstitutional.  Given that ch. 269 § 10(h) does not impose a total ban on gun ownership, *Hightower v. City of Boston,* 693 F.3d 61, 79 n.14 (2012) ("To be clear, there is no suitable person requirement for issuance of an FID card; an FID card 'shall issue, unless the applicant' is statutorily disqualified,") it does not violate the Second Amendment as interpreted by *Heller*.

Petitioner has not shown that the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or that the state court decided a case differently on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 412-413.  Not only did the MAC correctly identify the correct legal principle, it applied that principle correctly. Petitioner's claim under the Second Amendment must be denied.

B. There was sufficient evidence on which to convict Petitioner of causing "serious bodily injury" and there was no violation of his due process rights.

Petitioner also claims that his conviction for having caused "serious bodily injury" was both an unreasonable determination of the facts and a violation of his due process rights. In his petition, Petitioner wrote,

> The Commonwealth of Massachusetts indicted the
> petitioner for causing "serious" bodily injury, which is

---

[4] In *McDonald*, 561 U.S. at 791, the Supreme Court held that the Second Amendment's right to possess a handgun in the home applies equally to the Federal Government and the states. "In *Heller,* we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense . . .a provision of the Bill of Rights that protects a right that is fundamental from an American perspective applies equally to the Federal Government and the States."  *Id., see Hightower*, 822 F. Supp. 2d 38, 47 (1st Cir. 2011) ("In 2010, the Supreme Court made clear that the Second Amendment's right to bear arms applies to the states as well as to the federal government.").

>   defined by state statue as "loss or impairment of a bodily function." The trial evidence established that a fracture or similar injury ostensibly causing an impairment, upon with [*sic*] the Commonwealth relied to prove "serious" bodily injury, occurred on a prior occasion in which the petitioner was not involved, and thus the petitioner was prosecuted, convicted, and sentenced upon insufficient evidence and such is inconsistent with due process as required by the Fifth and Fourteenth Amendment [sic] to the United States Constitution.[5]

(#1 at 5.) Petitioner claims that the injuries to Aheron's nose were preexisting and therefore "whatever harm the Appeals Court may have found that the petitioner caused K.A., such did not amount to 'serious' bodily injury because such did not cause the fracture that caused the breathing difficulties (which apparently was the 'serious' bodily injury that the Appeals Court found)." (#35 at 8.) Petitioner's argument appears to be both a sufficiency of the evidence argument as well as a challenge to the Appellate court's factual findings.[6]

---

[5] Despite having made this statement in the petition, there was no mention of this ground in Petitioner's memorandum. Generally, in this Circuit "'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Owens v. United States,* 483 F.3d 48, 68 (1st Cir. 2007) (quoting, *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). Given Petitioner is pro se, and that his reply memorandum addresses this cause of action, the court will look at the underlying merits of argument. *United States v. Ciampi,* 419 F.3d 20, 24 (1st Cir. 2005) ("pro se habeas petitions normally should be construed in petitioner's favor.") (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Respondents address Petitioner's claim, therefore there is no prejudice to Respondent in reaching the merits of this argument.

[6] The Government argues that this claim should be denied because Petitioner failed to present a federal legal question in his ALOFAR. (#32 at 22.) Respondent is correct that AEPDA requires the federal portion of a claim to be clearly presented to the state court. "An application for a writ of habeas corpus . . . shall not be granted unless it appears that- (A) the applicant has exhausted the remedies available in the courts of the State . . .") 28 U.S.C. § 2254 (b)(1)(A); *Sanchez v. Roden*, 753 F.3d 279, 294 (1st Cir. 2014) ("A claim based on federal law is not exhausted unless a petitioner has 'fairly and recognizably' presented it to the state courts. *Casella v. Clemons,* 207 F.3d 18, 20 (1st Cir. 2000). By this we mean that a petitioner must have tendered his federal claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'"). It is true that Petitioner's ALOFAR did not use the words "due process," or cite to a federal case. Nevertheless, the MAC's decision noted the constitutional nature of the claim and addressed it. Given that 28 U.S.C. 2254 (b)(1)(2) allows for dismissal on the merits, this court will address the merits of Petitioner's claim notwithstanding the failure to exhaust. ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the State.").

Mass. Gen. Laws ch. 265 § 13A defines "serious injury" as "bodily injury that results in a permanent disfigurement, loss or impairment of bodily function, limb or organ, or substantial risk of death." The indictment alleged that the defendant caused serious bodily injury by fracturing Ahern's nasal bones. As found by the MAC:

> Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to prove impairment of a serious bodily function beyond a reasonable doubt. The defendant assaulted K.A. after she temporarily left King Arthur's Lounge.[7] While driving from the lounge back to the motel, the defendant repeatedly struck K.A. in the face. After returning to the motel, K.A. went into the bathroom to attend to her injuries. The defendant entered and resumed beating her for an extended period of time, choked her, and knocked her to the floor. She was bleeding from the nose, she had blood on her pants, and her face and neck were abraded and bruised.
>
> K.A. had a scar on her nose and a deviated septum from a previous injury. Her condition after the beating had degraded as follows. Her nasal bone had "shifted to the left side," she found it "more difficult to breathe," and her "sense of smell [was] vague." She testified that defendant had, in fact, hit her in the nose, and that she sought medical treatment that evening. The contemporaneous medical records describe "trauma" and a "comminuted fracture of the nasal bone."
>
> The jury could have found beyond a reasonable doubt that the defendant's blows caused a broken nose, and that a bodily function, breathing, was impaired as a result of the defendant's actions. *See Commonwealth v. Jean-Pierre,* 65 Mass. App. Ct. 162, 167 (2005).[8] While the defendant argues that this impairment and fracture were the result of an earlier injury, "[t]o the extent that conflicting inferences

---

[7] The MAC inserted a footnote which stated "K.A. testified that the defendant introduced her to prostitution. He had instructed her to talk to men at the lounge. K.A. told him she was uncomfortable, left, and called friends to come and get her. When she returned to the lounge, the defendant struck her, and they left. The beating which resulted in these charges then began in the car."

[8] The MAC inserted a footnote which quoted the jury instruction regarding assault and battery with serious bodily injury.

10


> are possible from the evidence, "it is for the jury to determine where the truth lies." *Commonwealth v. Wilborne,* 382 Mass. 241, 245 (1981), quoting from *Commonwealth v. Amazeen*, 375 Mass. 73, 81 (1978).

*Gutierrez,* 82 Mass. App. Ct. at 1118.

Sufficiency of the evidence claims fall under the Fourteenth Amendment's Due Process clause. Due process "requires that 'no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof - defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.' More succinctly, the relevant test we take from *Jackson*, is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *O'Laughlin v. O'Brien,* 568 F.3d 287, 299 (1st Cir. 2009) (quoting *Jackson v. Virginia,* 443 U.S. 307, 316 and 319 (1979) (internal citation omitted). Sufficiency claims are "evaluated under § 2254 (d)(1) and the court looks to 'whether the state court decision constitutes an unreasonable application of clearly established Supreme Court case law.'" *Id.* at 298 (quoting *Hurtado v. Tucker,* 245 F.3d 7, 15 (1st Cir. 2001) (further citations omitted). "[W]hen evaluating a claim of evidentiary insufficiency, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Housen v. Gelb,* 744 F.3d 221, 222 (1st Cir. 2014). Where the record supports conflicting inferences, the court presumes "that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326.

The MAC applied Supreme Court precedent correctly to Petitioner's case. The MAC stated that the evidence must be viewed in the light most favorable to the prosecution, and found to the extent there are conflicting inferences "it is for the jury to determine where the truth lies."

11

*Gutierrez,* 82 Mass. App. Ct. at 1118 (internal citations omitted). While Petitioner may disagree that the injuries Aheron suffered were sufficiently severe to be considered "serious bodily injury," he has nevertheless failed to prove that the MAC's decision was unreasonable. *See, Housen,* 744 F.3d at 226 ("'a habeas court may not freely reweigh competing inferences but must accept those reasonable inferences that are most compatible with the jury's verdict.'") (citing *Magraw v. Roden*, 743 F.3d 1, 7 (1st Cir. 2014)).

"A state court's findings on factual issues 'shall be presumed to be correct' and the petitioner bears the burden of disproving factual findings by 'clear and convincing evidence.'" *McCambridge,* 303 F.3d at 34-35 (quoting 28 U.S.C. § 2254(e)(1)). Petitioner has not proven by clear and convincing evidence that the MAC's factual findings were unreasonable. The MAC noted that Petitioner repeatedly struck Aheron in the face, that her face and neck were abraded and bruised, and that the contemporaneous medical records described trauma and comminuted fracture of the nasal bones. *See Gutierrez,* 82 Mass. App. Ct. at 1118. Petitioner has provided no evidence that these factual findings were incorrect, let alone provided the "clear and convincing" evidence necessary under 28 U.S.C. § 2254(e)(1).

## CONCLUSION

For the above reasons, I RECOMMEND that (1) the petitioner's motions under 28 U.S.C. §2254 to Vacate, Set Aside, or Correct Sentence by a Person in State Custody (#1) be DENIED, and (2) Final Judgment enter DISMISSING the action.

## V.   REVIEW BY THE DISTRICT JUDGE

The parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's

receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603(1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ M.Page Kelley  
M. Page Kelley  
United States Magistrate Judge

October 1, 2015